**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William J. Connolly, Sr.


        v.                              Civil No. 08-cv-509-JD

Michael J. Astrue,
Commissioner,
Social Security Administration


### REPORT AND RECOMMENDATION


        Before the court is plaintiff William J. Connolly's motion
for an order reversing the October 15, 2008 final decision
denying his applications for disability insurance benefits and
supplemental income benefits under the Social Security Act
(referred to hereinafter jointly as "social security benefits")
(document no. 9).  Plaintiff alleged a disability onset date of
June 16, 2006, based on several physical and mental impairments,
including cervical and lumbar degenerative discs, depression,
anxiety, arm and leg numbness, and pain.  Defendant objects and
seeks an order affirming the denial of benefits. (document no.
12).  For the reasons set forth below, I recommend that
plaintiff's motion be denied and the decision to deny benefits be
affirmed.

<u>Discussion</u>

**1.  Statement of Uncontested Facts**.

Pursuant to this court's local rules, <u>see</u> United States District Court for the District of New Hampshire Rule 9.1(d), the parties filed a joint statement of material facts (document no. 13) which are part of the record and which I have reviewed.  Only those facts relevant to the disposition of this matter are discussed below, as needed.

**2.  Standard of Review**

An individual seeking social security benefits has a right to judicial review of a decision denying the application.  <u>See</u> 42 U.S.C. § 405(g) (Supp. 2008).  The court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record.  <u>See</u> <u>id.</u>  The factual findings of the Commissioner shall be conclusive, as long as they are supported by "substantial evidence" in the record. <u>See</u> <u>Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)

(quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938));
<u>see</u> <u>also</u> <u>Currier v. Sec'y of HHS</u>, 612 F.2d 594, 597 (1st Cir.
1980).  The Commissioner is responsible for resolving issues of
credibility and drawing inferences from the evidence in the
record.  <u>See</u> <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st
Cir. 1981) (reviewing court must defer to the judgment of the
Commissioner).  The Court does not need to agree with the
Commissioner's decision but only needs to determine whether it is
supported by substantial evidence.  <u>See</u> <u>id.</u>

A final decision denying benefits must be upheld unless it
is based on a legal or factual error.  <u>See</u> <u>Manso-Pizarro v. Sec'y</u>
<u>of HHS</u>, 76 F.3d 15, 16 (1st Cir. 1996) (citing <u>Sullivan v.</u>
<u>Hudson</u>, 490 U.S. 877, 885 (1989)).  If the ALJ made a legal or
factual error, the decision may either be reversed or remanded to
consider new, material evidence or to apply the correct legal
standard.  <u>See</u> 42 U.S.C. § 405(g); <u>see</u> <u>also</u> <u>Martin v. Astrue</u>, No.
C.A. 07-388A, 2008 WL 5111918, *2-3 (D.R.I. Dec. 2, 2008) (citing
authority about when to remand and when to reverse); <u>Evangelista</u>
<u>v. Sec'y HHS</u>, 826 F.2d 136, 139 (1st Cir. 1987) (describing the
newness/materiality and the good cause showings that justify a
remand).

### 3.  Analysis

Plaintiff applied for social security benefits because of a back injury and depression precipitated by the limitations that back injury caused.  Following the five step disability analysis, see 40 C.F.R. § 404.1520, the administrative law judge ("ALJ") found that plaintiff:  (1) has not been engaged in any gainful activity since his June 16, 2006 alleged disability onset date; (2) that his back problems stem from degenerative disc disease of the spine which affects his ability to perform basic work functions and is a severe impairment, but his depression has not lasted for the requisite twelve month period so is not severe; (3) that the impairments did not meet or equal a listed impairment in the regulations, see 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, ("Listings"); (4) that he retained the residual functional capacity ("RFC") to engage in light work; and (5) that though plaintiff could not perform his past relevant work, the Medical–Vocational Rules, see id. App. 2 (the "Grid"), direct a finding of not disabled because there are a number of jobs in the national economy which he could do.  See CR at 9–13.  Plaintiff argues the decision to deny him benefits should be reversed because (a) the determination that his mental impairment had not

4

lasted for 12 months is not supported by substantial evidence, (b) his treating physicians' opinions were not weighed appropriately, and (c) his alleged pain was not evaluated properly.  I address each argument below in turn.

<u>(a)   Duration of Mental Impairment</u>

Plaintiff was injured on June 16, 2006 while moving heavy boxes at work, sustaining cervical strain and lumbar spine strain.  He first applied for social security benefits on December 30, 2006, just six months after his alleged onset date; however, his disability hearing before the ALJ did not occur until July 8, 2008, more than two years after plaintiff was injured.  At that time he had not worked since his June 2006 alleged onset date.  Plaintiff contends that since his June 2006 injury he has struggled with depression because of his pain and resulting inability to work and to engage in many activities which he enjoyed previously, like snowmobiling and fishing.  The ALJ accepted that plaintiff had suffered from depression, based on his complaints in August 2006, but concluded that it was not severe because it had not lasted for twelve months.  <u>See</u> CR at 11.  Plaintiff now asserts that he continues to fight depression and has not pursued treatment for it only because he has not had

health insurance to cover the cost of therapy or medication.[1]

In order to qualify for social security benefits, plaintiff, who bears the burden of proof, must establish both that he has a severe impairment and that it has lasted for a continuous twelve month period.  See 42 U.S.C. §§ 416(i)(1) & 423(d); 20 C.F.R. §§ 404.1505(a) & 416.905(a) (defining disability)[2]; id. § 404.1509 (duration requirement); id. § 404.1512 (burden of proof). Disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted for a continuous period of not less than 12 months.  To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any substantial gainful work that exists in the national economy.  If your severe impairment(s) does not meet or medically equal a listing in appendix 1, we will assess your residual functional capacity. . ..

Id. § 404.1505.

------

[1]As plaintiff explained in his February 2008 appeal:  "I don't have any health insurance [sic] right now so I can't afford any doctor visits or medications.  I am in great pain, but can't afford to see anyone."  CR at 150.

[2]Because the regulations governing disability insurance benefits, set forth in Part 404, are the same as the regulations governing supplemental security income, set forth in Part 416, hereinafter I will cite just one regulation.  See Reagan v. Sec'y HHS, 877 F.2d 123, 124 (1st Cir. 1989) (two sets of regulations "are identical").

The ALJ determined that the record "does not establish that the claimant has a mental impairment that has lasted for the twelve month period required to be considered severe."  CR at 11. As an initial matter, it bears noting that the severity of the impairment is not determined by its duration, but instead is determined based on medical evidence that documents physical or mental limitations.  See 20 C.F.R. §§ 404.1520(c)-(d) (describing the severity analysis) & 404.1525(a) (providing the Listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity); see also Listings, § 12.04A & § 12.04B (listing characteristics of severe depression)[3].  An impairment must be both severe and last continuously for a twelve month period, rendering both factors indispensable to the disability determination.  See 20 C.F.R. § 404.1505.  The ALJ's error appears to be semantic, however, because the ALJ's finding that plaintiff's depression was not severe because his functional ability was only mildly impaired is supported by substantial evidence and is consistent with the

_____

[3]The Listings set forth medical findings, referred to as "Paragraph A" criteria, and impairment-related functional limitations, referred to as "Paragraph B" criteria.  See id. § 12.00A.  There are additional functional criteria set forth in Paragraph C, which become relevant only if the Paragraph B criteria are not satisfied.  See id.

Listings requirement that there must be marked impairment before
depression may be deemed severe.  See CR at 9-11 (declining to
find disability based on depression at step 2 of the evaluation
process)[4] & CR at 309-11, 326-28 (assessment of his ability to
perform basic work-related activities); see also 20 C.F.R. §
1520(a)(4)(ii) & (iii) (assessing the medical severity of an
impairment based on the Listings); id. § 404.1520a (providing
steps for evaluation of mental impairments in particular); Ward
v. Comm'r HHS, 211 F.3d 652, 656 (1st Cir. 2000) (declining to
remand because of error if result would be the same).  On this
record, and given plaintiff's oblique challenge to the severity
determination specifically, no further analysis of it is
warranted.

Plaintiff directly challenges the ALJ's conclusion that his
depression did not persist for the requisite 12 month period and

---

[4]The evidence must show that plaintiff had at least four of the
following:  pervasive loss of interest in almost all
activities; appetite disturbances; sleep disturbances,
psychomotor agitation, decreased energy; difficulty concentrating
or thinking; suicidal thoughts, feelings of worthlessness, or
paranoid thinking; which resulted in at least two of the
following:  marked restriction on claimant's activities of daily
living ("ADL"); marked difficulty with claimant's ability to
maintain social function or to maintain his concentration,
persistence or pace; or which caused episodes of decompensation.
See Listings, § 12.04A & § 12.04B.  The record simply does not
demonstrate that plaintiff suffered such extreme problems.

proffers as an explanation for the lack of medical evidence documenting his mental impairment the fact that he could not afford to seek treatment.  Plaintiff relies heavily on Dr. Thomas P. Lynch's diagnosis of him as having "an adjustment disorder with depressed mood, chronic, and pain disorder, chronic, due to his medical condition," as evidence that the ALJ erred.  See Pl.'s Mem. in Supp. of Mot. to Remand (document no. 9.1) ("Pl.'s Mem.") at 5; see also CR at 306-11 (Dr. Lynch's report).  Dr. Lynch's evaluation occurred on April 19, 2007, however, only 10 months after plaintiff's injury in June 2006.  There are no later notes or more recent evaluations of plaintiff by Dr. Lynch.[5]  The latest assessment of plaintiff's mental impairment was on May 1, 2007, by Dr. Edward G. Martin, who completed a Psychiatric Review Technique form that indicated plaintiff had both an affective disorder and a somatoform disorder.  See CR at 312-29.  Again, however, that evaluation was done within the initial twelve month period so cannot be considered evidence that plaintiff's depression continued for at least twelve months.

The record's lack of more recent documentation evidencing

_____

[5]Dr. Lynch predicted that plaintiff should improve, opining that his "overall prognosis is fair," given his "generally good adjustment in the past."  CR at 311.

plaintiff's alleged continuing struggle with depression could be excused if he had a justifiable reason for failing to pursue any treatment for it.  Social Security Ruling 82-59 provides, in relevant part:

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

Santos-Isaac v. Sec'y HHS, No. 95-1227, 1995 WL 522415, *2 (1st Cir. Sept. 6, 1995) (rejecting plaintiff's justification that he failed to understand the importance of taking his medication because he was otherwise not disabled).  A justifiable cause for failing to follow treatment cannot be willful and must be reasonable.  See Schena v. Sec'y HHS, 635 F.2d 15, 19 (1st Cir. 1980) (identifying reasonable factors to excuse failing to undergo treatment as the risks involved, the likelihood of success, the consequences of failure and the availability of alternative treatment); see also Spindel v. Comm'r Soc. Sec. Admin., No. 07-35742, 333 Fed. Appx. 174, 2009 WL 1416745 (9th Cir. May 21, 2009) (an unexplained or inadequate failure to seek treatment casts doubt on a claimant's credibility).

Among the reasons that are considered justifiable is the inability to afford prescribed treatment.  See West's Soc. Sec. Reporting Service – Rulings:  1975–1982 at 793–800, Social Security Program Policy Statement ("SSR") 82–59, 1982 WL 31384. The ruling explains:

> Although a free or subsidized source of
> treatment is often available, the claim
> may be allowed where such treatment is not
> reasonably available in the local community.
> All possible resources (e.g., clinics,
> charitable and public assistance agencies,
> etc.), must be explored.  Contacts with such
> resources and the claimant's financial
> circumstances must be documented.  Where
> treatment is not available, the case will be
> referred to VR.

Id. at 797.  The ALJ is required to fully evaluate the proffered reason for failing to follow prescribed treatment before concluding whether it is justifiable.  See id.

Plaintiff has not made the requisite showing that he tried to pursue therapy or to acquire prescription medication despite his financial limitations but to no avail, and his bald assertion now does not carry his burden of proof.  The record demonstrates that although he has not worked since his June 2006 injury, he was treated and prescribed medication through February 2007. Based on his own admission, he stopped going to the doctor for

11

strategic reasons related to his worker's compensation claim.
See CR at 295.  The record also shows that he had enrolled in a
program for free medication and was receiving it.  See CR at 276
& 293-96.  There is no evidence that he tried to participate in
any publicly or privately funded free mental health services, and
he admitted he had made no effort to pursue any vocational
rehabilitation service either.  See CR at 143 (2/1/07 disability
report).  Other examples that he could have received some care
had he wanted to are the recommendations that he go to the
emergency room and to a local clinic, yet there is no medical
evidence to indicate that he pursued either option.  See id. at
248, 265, 293-94.  The record is devoid of any proof that
substantiates his claim that he was financially precluded from
receiving medical treatment for his allegedly continuing
depression.  Cf. Myles v. Astrue, 582 F.3d 672, 677 (7th Cir.
2009) (remanding to explore whether prescribed medication was
covered by the public assistance claimant was receiving).

Sometimes the failure to pursue mental health care can be
fairly understood as a manifestation of the actual psychological
impairment for which care is needed.  "Although none of the
listed circumstances [in SSR 82-59] pertain to mental illness,

federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (citing cases). The record does not contain any evidence to support an inference, let alone the conclusion, that plaintiff's depression impaired his mental functioning to such a degree that he was unable to realize the significance of prescription medication. Cf. id. (reversing where plaintiff's refusal to take medication was a manifestation of her mental illness). To the contrary, the record shows that plaintiff reported feeling better when on Zoloft. He also actively sought medication in the fall of 2006 and early 2007 and enrolled himself in a free prescription drug program. See CR at 276 & 293-96. This evidence undermines plaintiff's claim that he did not continue to pursue therapy or take medication because he could not afford to do so.

The record readily establishes that although plaintiff may have struggled with depression based on his frustration and pain, he responded well to medication and declined to pursue any further treatment for his depression after the spring of 2007,

well within the critical 12 month duration requirement.  <u>See</u> <u>e.g.</u>
CR at 295-96, 311.  Without a justifiable excuse for not pursuing
treatment that had improved his mental impairment, <u>see</u> CR at 295-
96, his failure to continue the prescribed treatment and the lack
of medical evidence documenting some continued difficulty with
depression preclude a finding of disability based on that alleged
impairment.  <u>See</u> SSR 82-52, 1982 WL 31376; <u>see</u> <u>also</u> SSR 83-59,
1983 WL 31384.  Even accepting as true that plaintiff could not
afford treatment, he bore the burden of proving that his
depression continued.  <u>See</u> 20 C.F.R. § 404.1512.  To that end, he
could have obtained, at no cost to him, a more recent evaluation
of his mental impairment to provide the medical evidence needed
to satisfy the duration requirement.  <u>See</u> <u>id.</u> §§ 404.1514 &
404.1517 (providing that medical evidence may be paid for at the
Social Security Administration's expense).  The ALJ's
determination that plaintiff's depression did not satisfy the
duration requirement is supported by substantial evidence.

### (b)  Weight Given Treating Physicians

Plaintiff next argues the ALJ failed to give appropriate
weight to his treating physicians, in particular in relation to
the ALJ's assessment of plaintiff's RFC.  He argues that the ALJ

erroneously relied on the consulting examination done by Dr.
Jonathan Jaffe on April 13, 2007, see CR at 298–305, which was
not consistent with the opinions of plaintiff's treating
physicians or the other medical evidence on record, including his
own testimony about his limitations.  He also contends that his
failure to seek treatment cannot be construed as evidence of
improvement, because his lack of insurance was the reason he
stopped getting medical care.

      To support his claim that the ALJ did not properly evaluate
the treating doctors' assessments, plaintiff cites the early
diagnoses of Drs. Geoffrey Stein and William Brewster, at
Seacoast Redicare, which were confirmed a month later by Dr.
Gavin Webb and his assistant, Bronna Eckelman.  These doctors
diagnosed plaintiff with an acute cervical sprain and aggravated
underlying mild cervical spondylosis, which restricted
plaintiff's abilities to lift, bend, kneel, squat and climb, and
limited him to only occasionally stand, walk, reach and drive.
CR at 182–83, 191–92, 237–39 & 246.  Plaintiff was referred to
Seacoast Area Physiatry, id. at 251, where a physician assistant,
Stephanie Diamond, began treating him in October 2006.  Her
opinion was consistent with the other doctors, that plaintiff had

15

a cervical sprain with cervical and thoracic somatic dysfunction,
which was causing him chronic pain and related depression.  Id.
at 288-90.  Ms. Diamond opined similarly about his work-related
restrictions, including that he should limit his lifting and
length of his work day.  Id.  Though Ms. Diamond stated on
October 6, 2006, that plaintiff's complaints of pain were
disproportionate to his injuries, her notes indicate she was
concerned that his reported pain may have been attributable to
his depression, which in turn was aggravated by his injury and
restricted life style.  Id.  Plaintiff did not see Ms. Diamond
again until February 2007, when he returned for more prescription
medication.  At that time, her opinion remained fairly consistent
with her prior opinion and the initial diagnoses, that he had
sustained the cervical strain and had some cervical and thoracic
somatic dysfunction, that together were impacting his work
capacity.  CR at 295-97.

     Plaintiff neglects to recognize that these treating sources
predicted that he would fully recover within a short time frame.
See id. at 185 (June 2006 report that goal was to return to work
without restrictions), 209 (July 2006 report that his "rehab
potential" was excellent and that treatment would last no more

than 6–12 weeks); 247 (August 2006 expectation that his condition would improve with continued time and physical therapy), 264 (September 2006 report that plaintiff was improving with physical therapy and appeared much brighter); & 289 (October 2006 assessment that physical therapy was helping him but he needed to cut down on his cigarette smoking and alcohol intake).  From the very beginning, the doctors opined that plaintiff could continue to work, just with modifications.  See id. at 183  (June 28, 2006 visit with Dr. Stein), 192 (Dr. Brewster's July 6, 2006 evaluation) & 238 (Dr. Webb's July 12, 2006 plan for "light duty restrictions with no significant lifting").  Plaintiff did not continue working, however, and he both neglected to keep appointments to continue receiving the care that was helping him, and aggravated his health by smoking and drinking.  Id. at 293 (February 2007 note declining to refill Zoloft prescription because plaintiff "had not been seen for an extended period of time"), 296 (noting "no change in work capacity" but need for a treatment course to include trigger point injections and reduced alcohol and nicotine abuse), & 206 (Marsh Brook Rehabilitation outpatient physical therapy service discharging plaintiff because of a "series of no-shows and cancellations").

17

The regulations require that all medical opinions be
evaluated, see 20 C.F.R. § 404.1527(b) & (d), and that treating
physician's opinions be weighed more heavily than consulting or
examining physician's opinions because treating physicians are
"most able to provide a detailed, longitudinal picture of your
medical impairment(s)."  See id. § 404.1527(d); see also Leahy v.
Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) (deferring to
treating physician who "have the best opportunity to know and
observe the patient as an individual" (internal quotation
omitted)); Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)
(explaining weight to be accorded various medical opinions).  The
regulations also provide that doctors' opinions do not determine
whether plaintiff is disabled, but rather the ALJ makes the
disability determination based on all the medical evidence, which
includes non-examining sources such as Dr. Jaffe's report.  See
id. § 404.1512(b)(6) (defining disability evidence as including
the findings made by State agency medical or psychological
consultants) & §§ 404.1520, 404.1527(c) & 404.1527(e) (providing
how the ALJ, not the doctors or consultants, makes the disability
determination).  The record demonstrates the ALJ properly weighed
the opinions of the doctors who saw plaintiff in 2006 and 2007,

18

as explained below.

First, though plaintiff refers to these doctors as his treating physicians, the record reveals that plaintiff did not have a primary care physician or any other medical care provider that could be understood as having treated him for a sufficient time period to provide the longitudinal perspective and detailed knowledge base that a treating physician typically is understood to have.  See Rose, 34 F.3d at 18; see also 20 C.F.R. § 404.1527 (d)(2).  The opinions of Drs. Stein, Brewster and Webb, and PAs Eckelman and Diamond, therefore, were not required to have been given controlling weight but need only have been accorded that weight justified by the length, nature and extent of the treatment relationship.  See id. § 404.1527(d)(i) & (ii).

Second, the ALJ properly discounted these opinions because not one demonstrated that plaintiff's back injury had persisted beyond the requisite 12 month duration period and none supported the inference that the injury would continue.  As discussed above, the doctors who treated plaintiff were optimistic that he would fully recover.  Although plaintiff again explains that he does not have current medical evidence of his continuing problems because he has not had insurance, his failure to seek treatment

or to obtain a more recent medical evaluation is not persuasive for the reasons set forth supra, in section (a).

Third and finally, the record demonstrates that the ALJ evaluated all of the evidence before deciding whether plaintiff was disabled. See CR at 9-10 (discussing the findings of Drs. Stein, Brewster and Webb, and PAs Eckelman and Diamond). The ALJ found that plaintiff had a severe impairment in the form of degenerative disc disease of the cervical spine but concluded he retained the RFC to do the full range of light work. See id. at 11-12. Dr. Jaffe reviewed the medical evidence in plaintiff's file and made specific findings about his physical RFC based on that evidence. See CR at 298-305. Dr. Jaffe's findings were consistent with plaintiff's treatment notes, and were properly weighted by the ALJ. See 20 C.F.R. § 404.1527(f)(1) & (2) (providing weight to be given State agency medical consultants whose "highly qualified" expert opinions inform the decision about the existence and severity of an impairment). Though plaintiff argues the record does not substantiate Dr. Jaffe's prediction that plaintiff would sustain improvement that would render him capable of functioning by June 2007, within one year of his alleged onset date, see Pl.'s Mem. at 13, the record does

not contain any evidence that contradicts or undermines that

conclusion.  Again it was plaintiff's burden to proffer evidence

of a medically determinable impairment that existed continuously

for at least twelve months, and the record simply contains no

medical evidence beyond the spring of 2007.  Dr. Jaffe's opinion,

therefore, is supported by the record.

Plaintiff's second argument for reversal is unpersuasive.

### (c)  Evaluation of Plaintiff's Pain

Plaintiff's final argument contends the ALJ improperly

discredited his complaints of pain which, had they been evaluated

correctly, would have further limited his RFC beyond what the

objective medical evidence established.  In support of this

argument, plaintiff asserts that the ALJ did not follow the

analysis set forth in Avery v. Sec'y HHS, 797 F.2d 19 (1st Cir.

1986), and claims that the ALJ did not fully analyze the record,

because

> the ALJ's explanation revolves primarily around
> Plaintiff's failure to seek treatment after a
> February 9, 2007 office visit at Seacoast Area
> Physiatry, which has been previously discussed,
> and the issue of the Plaintiff's symptoms being
> out of proportion to the findings, which has
> also been previously discussed.

Pl.'s Mem at 15 (citing CR at 12).  Without further elaboration

of this argument, I assume plaintiff intends to assert that his failure to seek treatment is excusable and his reported pain was credible.

Plaintiff's reports of pain "must be evaluated with due consideration for credibility, motivation and medical evidence of impairment." Santos-Isaac v. Sec'y HHS, No. 95-1227, 1995 WL 522415, *1 (1st Cir. Sept. 6, 1995) (citing Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985)(per curiam)).  Pain is a subjective symptom of an impairment's severity and so may be relevant to the ALJ's disability determination.  See 20 C.F.R. § 404.1529(c) (evaluating intensity and persistence of symptoms to determine RFC).  The ALJ is responsible for resolving issues of credibility like plaintiff's alleged pain, and his decision must be upheld unless it is not supported by substantial evidence.  See Ortiz, 890 F.2d at 523 (upholding the ALJ's assessment of subjective pain where he has heard the testimony and observed the claimant). My review of his decision and the record supporting it leads to the conclusion that the ALJ followed the Avery guidelines in evaluating plaintiff's alleged disabling pain and his credibility determination is supported by substantial evidence.

In Avery, the First Circuit identified several factors that

are relevant to the analysis of alleged disabling pain and about
which the ALJ must obtain information.  See id., 797 F.2d at 28.
Those factors are:  the nature, location, onset, duration,
frequency, radiation and intensity of any pain; precipitating and
aggravating factors; type, dosage, effectiveness and adverse
side-effects of any pain medication; treatment, other than
medication, for the pain; functional restrictions; and
descriptions of claimant's daily activities.  See id. at 29; see
also Russell v. Barnhart, No. 03-23-B, 2004 WL 51315, *6 (D.N.H.
Jan 9, 2004), aff'd, 111 Fed.Appx. 26 (1st Cir. 2004) (following
Avery to assess plaintiff's credibility with respect to his pain
symptoms); 20 C.F.R. § 404.1529 (providing how to evaluate
symptoms, including pain).  "In evaluating a claimant's
subjective complaints of pain, the adjudicator must give full
consideration to all of the available evidence, medical and
other, that reflects on the impairment and any attendant
limitations of function."  Avery, 797 F.2d at 29.

　　　SSR 96-7p elaborates on the Avery factors.  See West's Soc.
Sec. Reporting Serv. - Rulings:  1992-2009 at 133-42 (Supp.
2009).  The Ruling provides in relevant part:

　　　　　　　Because symptoms, such as pain, sometimes
　　　　　　　suggest a greater severity of impairment than

> can be shown by objective medical evidence alone,
> the adjudicator must carefully consider the
> individual's statements about symptoms with
> the rest of the relevant evidence in the case
> record in reaching a conclusion about the
> credibility of the individual's statements if
> a disability determination or decision that
> is fully favorable to the individual cannot be
> made solely on the basis of objective medical
> evidence.

Id. at 133-34.  A claimant's medical treatment history can be considered corroborative evidence of the reported pain.  See id. at 140 (listing evidence that lends support to allegations of intense and persistent symptoms).  Likewise, the failure to follow prescribed treatment may serve to undermine a claimant's alleged pain; however, the adjudicator must first explore whether there are good reasons for failing to pursue medical treatment. See id.

One justification for not seeking medical care may be the inability to afford treatment and the lack of access to free or low-cost medical services.  See id. at 141.  Many courts have followed this directive to conclude that a claimant's complaints of pain cannot be discredited based on gaps in the medical record when the claimant was financially precluded from obtaining needed care.  See e.g. Myles, 582 F.3d at 677 (remanding to explore whether claimant's public assistance prevented her from obtaining

the care she needed); <u>Orn v. Astrue</u>, 495 F.3d 625, 638 (9th Cir. 2007) (failing to seek medical treatment when claimant had no insurance cannot lead to an adverse credibility determination); <u>Kinney v. Comm'r of Soc. Sec.</u>. 244 Fed.Appx. 467, 470 (3rd Cir. 2007) (excusing failure to seek treatment where physicians did not accept Medicaid); <u>Miranda v. Barnhart</u>, 205 Fed. Appx. 638, 642 (10th Cir. 2005) (requiring adjudicator to consider proffered explanation of inability to afford treatment before benefits may be denied).  Plaintiff would like to fall into this line of cases to explain his lack of medical evidence and reverse the ALJ's credibility assessment.  The facts here, however, do not show the type of documented financial barrier that prevented the claimants in those cases from receiving necessary care.

Here, plaintiff's failure to continue prescribed treatment or seek additional care was not justified for all the reasons set forth, <u>supra</u>, in subsection (a).  To reiterate just a few of the more compelling facts, plaintiff was referred to a clinic to get a primary care physician, yet declined to follow that advice. Plaintiff also had been accepted into a free medicine program, but stopped receiving the prescribed drugs because he had not kept medical appointments.  The record reflects that plaintiff

did not pursue any self-help options, in the form of vocational rehabilitation programs or continuing at home the exercise regime he presumably would have learned from those physical therapy sessions he did attend which, had he done, might have given some credence to his claimed desire to receive help.  The evidence also reflects that he was able to engage in activities, like simple household chores and socializing with friends, which required the type of skill set that should have also enabled him to pursue avenues for free or subsidized care, but there is no evidence he made any effort to avail himself of such help.  The only evidence in the record of plaintiff's financial inability to receive care is his own representation, which, based on the entire record, the ALJ was free to discredit.  See SSR 96-7p, (gaps in medical evidence can demonstrate the pain did not warrant continued care).

Since the record does not support the conclusion that plaintiff's failure to seek treatment was justified, the lack of medical evidence supporting his alleged pain was reasonably interpreted by the ALJ as undermining plaintiff's credibility. The record demonstrates that the ALJ applied the Avery factors to find plaintiff's complaints about the persistence and intensity

of his pain were simply not that credible.  The record suggests
plaintiff's injury caused him pain, which in turn precipitated
his depression, which came full circle and aggravated the pain
caused by his injury.  <u>See</u> CR at 289 (PA Diamond's observation
that though his chronic pain appeared disproportionate to his
injury, that pain was probably aggravated by his depression).
Plaintiff's problem again, however, is that the record contains
no medical evidence that could be understood as documenting the
"duration, frequency, . . or intensity of any pain," <u>Avery</u>, 797
F.2d at 29, beyond the spring of 2007.  <u>See</u> 20 C.F.R. §
404.1529(a) (requiring medical signs and laboratory findings
which show a medical impairment which could reasonably produce
the reported pain).  The record also shows that since April 2007
plaintiff has not taken regular medication for his mental health
needs, despite having adjusted his medication and having found an
effective drug.  <u>See</u> CR at 140 & 142; <u>see also</u> <u>Avery</u>, 797 F.2d at
29 (type, dosage and effectiveness of medication must be
assessed).  Without this medication, plaintiff claims he became
more depressed.  CR at 140.

He reported on May 29, 2007 that since the spring and summer

of 2007[6], his pain had progressively gotten worse in his back,
neck and hip, which was preventing him from working and which, in
turn, aggravated his depression because he was unable to help his
wife financially.  Id.  Though plaintiff testified that his ADLs
were becoming more limited, to include only minimal personal
hygiene activities, napping more frequently, and driving with his
wife, the record fairly consistently showed that he had done
little since early 2007 to help himself despite retaining the
ability to engage in a variety of ADLs.  See e.g. at 142-43
(admission that he had not participated in any vocational
programs or used any other employment services to help him get
back to work) & 105-11 (plaintiff's description of his ADLs).
All this evidence is in the record which the ALJ reviewed.  See
Avery, 797 F.2d at 29 (requiring ALJ to assess precipitating and
aggravating factors and ADLs).

    There is no other evidence in the record that plaintiff
sought treatment for his depression or pursued any course of
treatment that had been prescribed.  The only additional evidence
of plaintiff's pain are his own report and testimony.  He claimed
in February 2008, see CR at 146-51, that his condition had

---

[6]The record is unclear whether plaintiff meant 2006 or 2007.

28

deteriorated:

> I am in pain all the time now.  The physical
> therapist that I was seeing told me to lay
> down when I am in pain, but if I lay down too
> long, I get stiff and can't move.  My back
> hurts so much now that even my back pillow
> does not help.

Id. at 147.  He also reported that he was taking ibuprofen and
muscle relaxers for the pain and that his ADLs were now further
limited to exclude all driving and many household chores like
shoveling or vacuuming.  Id. at 148-49.  Yet plaintiff still had
not seen nor had any plans to see a doctor, hospital, clinic or
anyone else or had any testing done to monitor or treat his
physical and mental conditions.  Id. at 147.

The failure to seek treatment for this allegedly disabling
pain, particularly where plaintiff had responded favorably to the
physical therapy and prescribed medications, undermines his
credibility about the severity of his pain.  See Avery, 797 F.2d
at 29 (including in the credibility assessment the treatment or
medication sought for pain relief); see also Russell, 111
Fed.Appx. at 27 (failing to follow treatment contradicts
subjective complaints of pain); Parra v. Astrue, 481 F.3d 742,
750-51 (9th Cir. 2007) (inferring pain was not as all-disabling
as claimed where conservative treatment like physical therapy and

anti-inflammatory medication was not followed).  Plaintiff's
"statements about his pain or other symptoms will not alone
establish that [he is] disabled."  <u>See</u> 20 C.F.R. § 404.1529(a).
He was required to prove he had a medically determinable
impairment, and he was required to proffer evidence of medical
signs that showed he had an "impairment which could reasonably be
expected to produce the pain . . . alleged."  <u>Id.</u>  Plaintiff has
not carried his burden of proof.  On this record, the ALJ's
finding that the plaintiff's reported symptoms of pain were not
wholly credible is supported by substantial evidence and must be
upheld.  <u>See</u> <u>Ortiz</u>, 890 F.2d at 523.

Conclusion

For the reasons set forth above, I recommend that
plaintiff's motion to reverse (document no. 9) be denied and
defendant's motion to affirm (document no. 12) be granted.

Any objections to this report and recommendation must be
filed within fourteen (14) days of receipt of this notice.
Failure to file objections within the specified time waives the
right to appeal the district court's order.  <u>See</u> <u>Unauthorized</u>
<u>Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir.
1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir.

30

1986).

James R. Muirhead
United States Magistrate Judge

Date:   December 23, 2009

cc:     D. Lance Tillinghast, Esq.
        Robert J. Rabuck, Esq.